Hay, Judge,
delivered the opinion of the court:
The essential facts in this case are these:
On October 8, 1918, the plaintiff entered into a contract in writing with the United States to manufacture and deliver 1,000,000 pounds of dehydrated potatoes at 30 cents a pound; the potatoes were to be delivered by July 1, 1919. The contract was entered into on behalf of the United States by an officer clothed with authority to make the contract, and was in all respects a formal fixed-price contract.
■ The defendant contends that it was not a valid contract, because it did not contain a clause or provision providing for its cancellation or termination in the public interest, and cites a circular No. 88 issued'by the Quartermaster General of the United States Army, under the authority of the Secretary of War, to the officers under him prescribing what contract provisions should be inserted in all formal fixed-price contract's made after the date of said circular, thé date thereof being September 7, 1918, and the date of the contract in suit being October 8, 1918. The'circular provided among other things that there should be a provision in formal fixed-price contracts providing for their termination and cancellation in the public interest, and the contract did *426 not contain such a provision. This circular was issued to the officers of the Quartermaster Corps for their information and guidance in,the preparation of contracts. The public had no notice of it, nor did the plaintiff in this case. The contract in suit was prepared by an officer of the United States who had authority to enter into contracts of this character, and was presented to the plaintiff for its signature by said officer. The circular did not have the force and effect of law; there was no statute authorizing it; it was merely a direction to the officers of the Quartermaster Corps telling them how contracts were to be prepared. The circular is not a regulation prescribed by the Secretary of War; it is a circular issued by the Quartermaster General for the purpose of instruction to the officers of his corps, and can not be held to bind the plaintiff or to invalidate the contract entered into by it with an officer fully authorized to make it.
The plaintiff began performance of the contract on October 31, 1918, and by February 10, 1919, had partly performed the same by manufacturing and delivering to the United States 285,900 pounds of dehydrated potatoes for which the United States paid the plaintiff the contract price.
On February 8,1919, the United States asked the plaintiff to suspend operations under the contract, and on February 10, 1919, wrote to the plaintiff proposing an agreement for the cancellation of the contract. From that date up to May 19, 1919, negotiations were had between the plaintiff and an officer of the United States with authority to contract looking to a settlement between the parties as to the damages which the plaintiff had incurred by reason of the suspension of the contract. These negotiations were authorized by the United States under the terms of a circular issued by General Goethals, director of purchase, storage, and traffic. This circular was dated November 9, 1918, and was numbered 111. An agreement was reached on May 19, 1919, for a full and final settlement of all questions and claims growing out of the contract of October 8, 1918, and on May 19, 1919, a cancellation agreement in writing was entered into by the parties.
*427 Tinder this agreement the United States agreed to pay to the plaintiff the sum of $41,524.01, and the contract price for articles in process of manufacture at the time of the cancellation, the plaintiff to complete the manufacture of the same. These articles amounted at that time to 4,400 pounds of potatoes which were manufactured by the plaintiff, the contract price of which was the sum of $1,320. The United States refused to take these articles which were afterwards sold by the plaintiff for $1,103.44, showing a net loss to the plaintiff of the sum of $216.56. The plaintiff on its part in said cancellation agreement discharged the United States from all claims and demands whatsoever by reason of or arising out of the original contract.
This cancellation agreement also contained the following-provision :
“This agreement shall not become a valid' and binding obligation of the United States unless and until the approval of the board of review of Zone 7, Chicago, Ill., has been noted at the end of this instrument and upon Schedule A thereof.” Afterwards on May 19, 1919, there was noted, at the end of this instrument and upon Schedule A thereof the following: “Approved by board of contract- review, Zone No. 7, Chicago, Ill., May 19, 1919,” followed by the. signatures of the members of said board. Thus the aforesaid agreement became a valid and binding obligation of the United States, and was also, of course, a valid and binding obligation of the plaintiff.
For some reason this contract was sent for approval to the claims board, office of director of purchase, Washington, D. C., which board disapproved it. What jurisdiction this last-named board had in the premises does not appear. The agreement was complete in all its parts, conformed to the instructions in Circular 111, was executed by an officer of the United States having authority to act, and was as between the plaintiff and the United States a valid and binding obligation, which the claims board office of director of purchase has no power or authority to set aside. The matter was aftenvards taken up with the board of contract adjustment, which board affirmed the action of the claims *428 board, and the Secretary of War affirmed tire decision of the board of contract adjustment. But neither of these boards, nor the Secretary of War, had any authority or jurisdiction to pass upon the validity or invalidity of this agreement. The parties having entered into a valid and binding agreement, it closed the transaction. The United States was just as much bound by it as was the plaintiff, and no agency of the United States- had the authority to set it aside after it had been duly executed. " If the plaintiff had set out some other and larger claim under the original contract, it would not, in the face of this cancellation agreement, have been heard in this court, and the United States is equally bound. We are therefore of the opinion that the parties must stand by their contract, and under it the plaintiff is entitled to recover the sums set out in the conclusion of law:
The plaintiff in this suit claims that it - is entitled to damage for the suspension of the contract, and if it had not entered into the cancellation agreement we are of opinion that it would be entitled to the sums set out in Findings YI, VII, VIII, and IX, amounting in all to. the sum of $46,670.73, but the plaintiff is bound by the cancellation agreement, and judgment will be entered in its favor for' the sum of $41,740.57.
It is so ordered.
Geah:am, Judge; DowNey, Judge; Booth, Judge; and Campbell, Ghief Justice, concur.